IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CAROL BRAND,

    Plaintiff,

v.                                                                              2:17-cv-01203-WJ-LF

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
## ON MOTION TO REVERSE AND REMAND

THIS MATTER comes before the Court on plaintiff Carol Brand's Motion to Reverse or Remand (Doc. 19), which was fully briefed on October 1, 2018. *See* Docs. 21, 22, 23. Pursuant to 28 U.S.C. § 636, the Honorable Chief District Judge William P. Johnson referred this matter to me for a recommended disposition. Doc. 9. Having meticulously reviewed the entire record and being fully advised in the premises, I recommend that the Court GRANT Ms. Brand's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

    **I.**     **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court

with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the

claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[1] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Brand was born in 1960, completed two years of college, and worked for approximately 13 years as a receptionist in an optometry office. AR 179, 184.[2] Ms. Brand filed an application for disability insurance benefits on December 11, 2014—alleging disability since June 14, 2011 due to a brain injury, short-term memory loss, and diabetes. AR 158–64, 183. The Social Security Administration ("SSA") denied her claims initially on April 2, 2015. AR 88–92. The SSA denied her claims on reconsideration on July 21, 2015. AR 80–86. Ms. Brand requested a hearing before an ALJ. AR 103–04. On December 14, 2016, ALJ Ann Farris held a hearing. AR 42–71. ALJ Farris issued her unfavorable decision on April 5, 2017. AR 20–36.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

[2] Document 12-1 constitutes the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

At step one, the ALJ found that Ms. Brand had not engaged in substantial, gainful activity since June 14, 2011, her alleged onset date, through her date last insured, December 31, 2011. AR 25. At step two, the ALJ found that Ms. Brand had the following medically determinable impairments: superior sagittal sinus thrombosis,[3] and diabetes mellitus type 2. AR 26. The ALJ found, however, that Ms. Brand did not have "an impairment or combination of impairments that significantly limited [her] ability to perform basic work-related activities for 12 consecutive months" and, therefore, "did not have a severe impairment or combination of impairments." *Id*. The ALJ denied Ms. Brand's claim at step two and did not complete the rest of the sequential evaluation process.

Ms. Brand requested review by the Appeals Council. AR 153. The Appeals Council granted review to address the ALJ's failure to address the November 23, 2016 medical source statement from Dr. Louise McDade. AR 154–57. Ms. Brand submitted additional briefing and correspondence to the Appeals Council, as well as a June 8, 2017 medical source statement from clinical neuropsychologist Dr. Sandra Montoya. AR 8–16, 264–68. On October 31, 2017, the Appeals Council issued its unfavorable decision. AR 1–6. The Appeals Council gave "little weight" to the opinion of Dr. Louise McDade—finding her opinion inconsistent with her objective findings during the relevant time period. AR 5. The Appeals Council gave no weight to Dr. Sandra Montoya's opinion, finding that the opinion "does not relate to the period at issue." AR 4. The Appeals Council adopted the ALJ's finding that that Ms. Brand did not have a severe impairment prior to her date last insured. AR 5.

---

[3] The superior sagittal sinus is the largest venous channel in the brain. https://www.upmc.com/services/neurosurgery/brain/conditions/neurovascular-conditions/conditions/sinus-thrombosis#overview (last visited March 6, 2019). A thrombosis is a blood clot. *Id*. Superior sagittal sinus thrombosis is an uncommon cause of stroke. https://www.ahajournals.org/doi/full/10.1161/01.STR.26.3.496 (last visited March 6, 2019).

Ms. Brand timely appealed to this Court on December 7, 2017. Doc. 1.

**IV. Ms. Brand's Claims**

Ms. Brand argues that the ALJ and the Appeals Council erred in finding that she did not meet her de minimis burden of proof at step two. Specifically, she argues that (1) the ALJ failed to properly weigh the opinion of treating physician Dr. Adolfo Sanchez; (2) the ALJ and Appeals Council failed to properly weigh the opinion of treating physician Dr. Louise McDade; (3) the Appeals Council failed to properly weigh the opinion of neuropsychologist Dr. Sandra Montoya; and (4) the ALJ failed to discuss her cervical degenerative disease, or to explain why this impairment was not severe. Doc. 19 at 10–15.

Because I remand based on Ms. Brand's broader argument that the ALJ and the Appeals Council erred in finding she did not meet the de minimis standard of proof at step two, I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**V. Analysis**

Ms. Brand argues that she need only make a de minimis showing of medical severity at step two, and that once this showing is made, the ALJ must proceed to the next step in the sequential evaluation process. Doc. 19 at 9. She argues that the Commissioner's "position that the evidence of record fails to satisfy the de minimis severity standard is absurd." Doc. 22 at 1. The Commissioner argues that "there is **no** indication within the record that the impairment (or combination of impairments) impacted [Ms. Brand's] ability to perform basic work activities for the necessary duration of 12 months." Doc. 21 at 10 (emphasis added). The Commissioner further argues that the ALJ's finding that Ms. Brand's impairments were not severe "is supported by substantial evidence" and therefore should not be disturbed. *Id.* For the reasons explained below, I agree with Ms. Brand.

5

At step two, the agency determines whether the claimant's alleged impairment or combination of impairments is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). A claimant's impairment or combination of impairments is severe if it "significantly limits her ability to do basic work activities." *Fleetwood v. Barnhart*, 211 F. App'x 736, 739 (10th Cir. 2007) (unpublished) (internal citations omitted).

The SSA regulation that governs the determination of severity at step two is designed to screen out only those claimants with "impairments of a minimal nature which could never prevent a person from working." SSR 85-28,[4] 1985 WL 56856, at *2 (1985) (internal citation and quotation omitted). Step two is designed "to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." *Bowen*, 482 U.S. at 156 (O'Connor, J., concurring). The inquiry at step two is a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen*, 482 U.S. at 153–54). Given the purpose behind step two, "case law prescribes a very limited role for step two analysis." *Lee v. Barnhart*, 117 F. App'x 674, 676–77 (10th Cir. 2004) (unpublished).

The claimant has the burden of proof at step two to show that he or she has an impairment severe enough to interfere with the ability to work. *Bowen*, 482 U.S. at 146–54. Although the claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the burden at step two is a de minimis showing of impairment, *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (internal

---

[4] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs because they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

citation omitted); *see also Lee*, 117 F. App'x at 677 ("a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis."); BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "de minimis" as "trifling" or "negligible").

The determination of whether an impairment is severe at step two "is based on medical factors alone, and does not include consideration of such vocational factors as age, education, and work experience." *Langley*, 373 F.3d at 1123 (internal citation and quotation omitted). At step two, "medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28, 1985 WL 56856, at *4. Basic work activities include "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." *Id*. at *3; *see also Langley*, 373 F.3d at 1123.

The ALJ must carefully evaluate the medical evidence to assess how the claimant's impairment or combination of impairments impacts her ability to do basic work activities. SSR 85-28, 1985 WL 56856, at *4. The ALJ may make a finding of non-severity at step two only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352. SSR 85-28 requires that the evidence "clearly establish[]" that the impairment is not severe. The ruling reads, in pertinent part:

> A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are **not** medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not **clearly established** by medical evidence, however, adjudication must continue through the sequential evaluation process.

7

SSR 85-28, 1985 WL 56856, at *3 (emphasis added). "Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued." *Id*. at *4.

In this case, the ALJ failed to apply the correct legal standard. The Tenth Circuit has made it clear that a claimant must only make a "de minimis" showing of a severe impairment at step two—a "nondemanding standard." *Hawkins*, 113 F.3d at 1169. In addition, an ALJ may deny a claim at step two only if the medical evidence clearly establishes that a claimant's impairments "do not have more than a minimal effect on the [claimant's] physical or mental ability(ies) to perform basic work activities." SSR 85-28, 1985 WL 56856, at *3. "If . . . the claimant presents medical evidence and makes the de minimis showing of medical severity, the decision maker proceeds to step three." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). Here, the Appeal's Council's decision and the ALJ's decision that it adopted fail to recognize the low level of Ms. Brand's burden of proof at step two.

In support of her denial of Ms. Brand's claim at step two, the ALJ erroneously stated that the "record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has any functional limitations during the relevant period." AR 29. Were this true, the ALJ might have been justified in finding Ms. Brand did not make a de minimis showing of medical severity. But it is not true.

The record contains opinions from two of Ms. Brand's treating physicians which support a finding that she had a severe impairment during the relevant time period. On December 21, 2016, Dr. Adolfo Sanchez completed a medical source statement opining that Ms. Brand had

8

numerous functional limitations during the relevant time period. AR 472–76. Dr. Sanchez indicated that he had been treating Ms. Brand for the past five years in connection with her brain thrombus. AR 472. Dr. Sanchez opined that Ms. Brand's "cognition has worsened since brain thrombus in 2011."[5] *Id*. He further opined that her limitations were expected to last 12 months or more, and that "based on the patient's history," these limitations had lasted "since at least June of 2011." *Id*. Dr. Sanchez opined that Ms. Brand had the following mental limitations:

- Marked limitation in the ability to understand and remember simple instructions;
- Marked limitation in the ability to carry out simple instructions;
- Marked limitation in the ability to make judgments on simple work-related decisions;
- Extreme limitation in the ability to understand and remember complex instructions;
- Extreme limitation in the ability to carry out complex instructions;
- Marked limitation in the ability to make judgments on complex work-related decisions;
- Marked limitation in the ability to interact appropriately with the public;
- Marked limitation in the ability to interact appropriately with supervisors;
- Marked limitation in the ability to interact with co-workers;
- Marked limitation in the ability to respond appropriately to usual work situations to changes in a routine work setting.

AR 473–74. He opined that Ms. Brand's symptoms were severe enough to "constantly" interfere with the attention or concentration necessary to complete simple tasks, and that she had short term memory loss and difficulty remembering tasks. AR 475. Finally, Dr. Sanchez opined that

---

[5] The ALJ claimed that Dr. Sanchez's opinion did "not identify whether the claimant was this limited during the relevant period, and the opinion appears to assign these limitations for the claimant's worsening symptoms after the date last insured." AR 29. I disagree. Dr. Sanchez opined that Ms. Brand had the limitations noted in his opinion "since at least June of 2011." AR 472.

9

these limitations were consistent with Ms. Brand's "history of brain thrombosis," and he indicated that he was sending Ms. Brand for a "neuropsychological evaluation." AR 475–76.[6]

On November 22, 2016, treating physician Louise McDade completed a medical source statement. AR 432–34. Dr. McDade opined that Ms. Brand could only occasionally lift 10 to 20 pounds; that she was limited to walking 2 hours in an 8-hour workday and sitting up to 2 hours in an 8-hour workday; and had limited ability to reach overhead, handle, and do fine manipulation. AR 432–33. Dr. McDade further opined that Ms. Brand's memory was "preventing her from performing her usual tasks. Her memory is declining." AR 433. Dr. McDade opined that Ms. Brand had more "bad" days than "good" days due to her memory loss. *Id*. Dr. McDade further opined that Ms. Brand's decreased memory, right hand numbness, and chronic fatigue caused symptoms which "constantly" interfered with her ability to attend and concentrate on even simple tasks. AR 434. Dr. McDade believed that Ms. Brand's symptoms and limitations began in "2011 after thrombosis in brain." *Id*.[7]

The Commissioner argues that "there is **no** indication within the record that the impairment (or combination of impairments) impacted [Ms. Brand's] ability to perform basic work activities for the duration for 12 months." Doc. 21 at 10 (emphasis added). Again, were this true, the ALJ and Appeals Council might have been justified in finding Ms. Brand did not make a de minimis showing of medical severity. But it is not true. As discussed above, both

---

[6] There are two different dates in Dr. Sanchez's opinion. In one part of the opinion he states that Ms. Brand had the limitations in his opinion since 2011, and on another page he states she has had the limitations since 2015. *Compare* AR 472 *with* AR 476. The ALJ did not discuss or rely on this date discrepancy. *See* AR 29 (ALJ refers only to the page with the 2011 date on it in her decision). In any case, after the ALJ issued her decision, but before the Appeals Council issued its decision, Dr. Sanchez submitted a revised medical source statement in which he corrected both dates to 2011. *See* AR 610.

[7] The ALJ did not discuss Dr. McDade's opinion at all. *See* AR 23–30. The Appeals Council gave it "little weight." AR 5.

Drs. Sanchez and McDade opined that Ms. Brand's impairments impacted her ability to perform basic work activities during the relevant time period, and that these impairments began after her 2011 brain thrombus and had lasted more than 12 months. The Commissioner further argues that her finding that Ms. Brand did not have a severe impairment "is supported by substantial evidence." Doc. 21 at 10 (citing *Lax*, 489, F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.")). But the Commissioner, like the ALJ and the Appeals Council, ignores the fact that Ms. Brand's burden of proof at step two is only to make a de minimis showing of a severe impairment.

While this Court must affirm the ALJ's decision if it is supported by substantial evidence, SSR 85-28 requires the Court to "determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Ms. Brand] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). Neither the ALJ nor the Commissioner accounts for the fact that Ms. Brand has only a de minimis burden of proof at step two. Nor do they account for the fact that the ALJ can only find an impairment or combination of impairments "not severe" at step two if this finding is "clearly established by medical evidence." *See Gosch v. Astrue*, No. CIV.A. 09-1349-JWL, 2011 WL 1899289, at *6 (D. Kan. May 19, 2011) (holding that because SSR 85-28 requires a finding of non-severity to be "clearly established by medical evidence," a denial at step two is inappropriate where the record evidence "might be amenable to more than one interpretation" or "the medical evidence is equivocal"). The medical record evidence in this case is equivocal, as demonstrated by the positions the parties take in their briefs. *See* Docs. 19, 21, 22; *see also Sanchez v.*

*Berryhill*, No. CV 17-543 CG, 2018 WL 1870434, at *4 (D.N.M. Apr. 17, 2018) (holding that an ALJ explaining "why he found certain evidence more persuasive than other evidence in the record . . . is not equivalent to a conclusion that is "clearly established by medical evidence," as required by SSR 85-28"). Finally, the fact that the ALJ gave Dr. Sanchez's opinion "little to no weight" (AR 29), and that the Appeals Council gave Dr. McDade's opinion "little weight" (AR 5), does not show that the medical evidence "clearly established" that Ms. Brand's impairments were not severe, or that she failed to meet her de minimis burden of proof at step two. *See Young v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-872, 2014 WL 1788181, at *6 (N.D. Ohio May 5, 2014) (holding that a doctor's opinion given "little weight" would still comprise enough evidence to meet the de minimis standard); *Snedeker v. Colvin*, No. 3:13-CV-970 GLS/ESH, 2015 WL 1126598, at *5 (N.D.N.Y. Mar. 12, 2015) (same).

The Appeals Council and the ALJ applied the wrong legal standard and erred in denying Ms. Brand's claim at step two. Because Ms. Brand "present[ed] medical evidence and ma[d]e[] the de minimis showing of medical severity, the decision maker [should have] proceed[ed] to step three." *Williams*, 844 F.2d at 751. Because the ALJ did not proceed to the other steps of the sequential evaluation process, remand is required.

## VI. Conclusion

The ALJ/Commissioner erred in finding Ms. Brand did not make a de minimis showing of severity at step two. I recommend that the Court remand this case so that the ALJ can complete the sequential evaluation process. I do not reach Ms. Brand's other claimed errors, as they "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

12

I recommend that the Court GRANT Ms. Brand's Motion to Reverse and Remand (Doc. 19) and remand this case to the Commissioner for further proceedings.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court. In other words, if no objections are filed, no appellate review will be allowed.

_____
Laura Fashing
United States Magistrate Judge